1

2

3

4

5

6

7                     IN THE UNITED STATES DISTRICT COURT

8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11

12  THE BOARD OF TRUSTEES OF THE          Case No.: C10-3300 JSC
    CARPENTERS PENSION TRUST FUND
    FOR NORTHERN CALIFORNIA,              **ORDER REASSIGNING CASE TO**
13                                        **DISTRICT JUDGE; REPORT AND**
                                          **RECOMMENDATION THAT**
14          Plaintiff,                    **DEFENDANT'S MOTION FOR**
                                          **DEFAULT JUDGMENT BE**
15      v.                                **GRANTED**

16

17  FINER FLOOR COVERINGS, INC., a
    California Corporation,
18          Defendant – Third-Party Plaintiff,

19      and

20  SEDLACEK, INC.,

21          Third-Party Defendant.

22

23          In this enforcement action brought under the Employee Retirement Income Security

24  Act ("ERISA"), Defendant, Finer Floor Coverings, Inc., brings a Motion for Default

25  Judgment seeking entry of default judgment, damages, and attorneys' fees and costs against

26  Third-Party Defendant Sedlacek, Inc.  The Court finds that the Motion is suitable for

27  determination without oral argument, pursuant to Civil Local Rule 7–1(b).  Because the Court

28  has not obtained consent from Third-Party Defendant Sedlacek pursuant to 28 U.S.C. § 636, it

United States District Court
Northern District of California

1    ORDERS the case reassigned to a District Judge.  For the reasons given below, the court

2    recommends that Defendant's motion be GRANTED.

3                        **FACTUAL & PROCEDURAL BACKGROUND**

4           Plaintiff The Board of Trustees of the Carpenters Pension Trust Fund for Northern

5    California ("Pension Fund") are trustees and fiduciaries of an employee benefit plan created

6    by written Trust Agreement pursuant to section 302 of the Labor Management Relations Act,

7    29 U.S.C. § 186, and a multiemployer employee benefit plan within the meaning of sections

8    3, 4, and 502 of ERISA, 29 U.S.C. §§ 1002, 1003, and 1132.   The Pension Fund is

9    administered by a Board of Trustees which is empowered to bring this action on behalf of the

10   Trust.  29 U.S.C. §§ 1132(a)(3), 1451(a)(1)-(b).

11          At all times relevant to this action, Defendant Finer Floor Coverings, Inc. ("FFC") was

12   an employer within the meaning of ERISA Section 3(5), 29 U.S.C. § 1002(5), and an

13   employer in an industry affecting commerce within the meaning of 29 U.S.C. § 185.   For

14   many years Defendant operated a business in San Jose, California selling and installing high

15   quality flooring.  During that time Defendant was a party to a written collective bargaining

16   agreement, known as the Carpenters Master Agreement for Northern California ("Master

17   Agreement") with the Carpenters 46 Northern California Counties Conference Board, and

18   agreed to accept and be bound by all the terms, provisions and conditions of the Master

19   Agreement.  The Master Agreement obligated Defendant to make regular and timely

20   contributions to the Pension Fund on behalf of all those employees performing covered work.

21          In December 2002, Defendant ceased contributions to the Pension Fund and withdrew

22   from the Carpenter's Union pursuant to ERISA section 4203, 29 U.S.C. § 1382(a)(2).   As

23   required under ERISA section 4202, 29 U.S.C. § 1382, the Pension Fund determined the

24   amount of withdrawal liability in accordance with ERISA section 4211, 29 U.S.C. §1391.

25   Defendant was assessed a withdrawal liability of $198,201.00 that was payable in 119

26   payments from March 1, 2004 through March 1, 2014.  (Dkt. No. 1, 4:15-17).

27          In 2009, Defendant sold all of its assets and liabilities to Third-Party Defendant

28   Sedlacek, Inc., ("Sedlacek") which was owned by a former FFC employee for $411,750.00

*United States District Court*
*Northern District of California*

2

United States District Court
Northern District of California

1    ($381,750.00 after credits).  (Dkt. No. 55-2, ¶7).  Sedlacek assumed Defendant's withdrawal

2    liability pursuant to the asset sale agreement and agreed to indemnify FFC for any loss,

3    liability, claim, damage, or expense (including reasonable attorneys fees and expenses)

4    suffered or incurred to the extent the claim arises from a breach of a covenant in the asset sale

5    agreement.  (Dkt. No. 55-2, pp. 6, 14-15).  Upon execution of the asset sale agreement,

6    Sedlacek began doing business as "Finer Floors" at Defendant's prior address.  (Dkt. No. 55-

7    2, ¶ 10).  In April 2009, Defendant mailed notices to all of its creditors, including Plaintiff,

8    notifying them that FFC was no longer operating and its business had been purchased by

9    Sedlacek.  (Dkt. No. 55-2, ¶ 11).

10         After Sedlacek took over Defendant's operations it made three payments towards the

11   outstanding withdrawal liability and then defaulted.  (Dkt. No. 55-2, ¶¶ 12-14).  On February

12   3, 2010, Plaintiff sent a notice of default to the address where Sedlacek was now doing

13   business indicating that no monthly payments had been made from August 2009-February

14   2010; however, the notice was addressed to Defendant.  (Dkt. No. 1, p. 12).  (Dkt. No. 55-2

15   ¶¶ 13-16).  On June 7, 2010, Plaintiff  again sent notice of default to the address where

16   Sedlacek was now doing business again addressed to Defendant (rather than Sedlacek) stating

17   that FFC was in default of its withdrawal liabilities pursuant to 29 C.F.R. § 4219.31.  (Dkt.

18   No. 1, p. 13).   Defendant never received either notice of default.  (Dkt. No. 55-2, ¶¶ 13, 15).

19   Sedlacek made one final payment in August 2010.  (Dkt. No. 55-2, ¶ 14).

20         On July 28, 2010, Plaintiff filed a complaint to recover withdrawal liability from

21   Defendant under ERISA section 4201, 29 U.S.C. § 1381.  (Dkt. No. 1)  On December 13,

22   2010, Defendant filed a Third-Party Complaint against Sedlacek seeking indemnification for

23   all damages and fees suffered as a consequence of the claims brought by the Pension Fund in

24   their complaint.  (Dkt. No. 14).  Sedlacek failed to file a responsive pleading or otherwise

25   appear and the Clerk entered default pursuant to Federal Rule of Civil Procedure 55(a) on

26   April 1, 2011.  (Dkt. No. 27).  On January 24, 2012, Plaintiff and Defendant reached a

27   settlement which requires Defendant to pay $142,848.25 (this amount shall be reduced to

28

$139,848.00 if all amounts are timely received) in settlement of all claims.  (Dkt. No. 55-2, ¶19).

On April 26, 2012, Defendant moved for default judgment against Third-Party Defendant Sedlacek seeking damages in the amount of $167,632.91 based on contractual indemnity, as well as attorneys' fees and costs.  (Dkt. No. 55).  Defendant served Sedlacek with the Motion for Default Judgment by mail.  Sedlacek has not appeared or responded to the Motion for Default Judgment, and the deadline for opposing the motion has passed.  <u>See</u> Civil L.R. 7-3(a).

## DISCUSSION

**I.      Jurisdiction and Service of Process**

When a court is considering whether to enter a default judgment it has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  <u>In re Tuli</u>, 172 F.3d 707, 712 (9th Cir. 1999).  Here, the Court has subject matter jurisdiction pursuant to 29 U.S.C. § 185 (granting labor union organizations power to sue employers in Federal court) and § 1132 (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms). The Court has personal jurisdiction because Sedlacek is a California Corporation that engages in business activities in the Northern District of California.

A court is also required to "assess the adequacy of the service of process on the party against whom default is requested."  <u>Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters</u>, No. 00–0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).  Federal Rule of Civil Procedure 4(e) provides that service in accordance with California law is proper.  Under California law, a corporation may be served by delivering a copy of the summons and of the complaint to the person designated as agent for service of process.  <u>See</u> Cal.Civ.Proc.Code § 416.10(a).  Here, Sedlacek's agent for service of process was personally served with the Summons and Complaint.  (Dkt. No. 16).

**II.     Default Judgment**

After entry of default, a court may grant default judgment on the merits of the case. <u>See</u> Fed. R. Civ. P. 55.  The factual allegations of the complaint, except those concerning

damages, are deemed to have been admitted by the non-responding party.  Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977).  "The district court's decision whether to enter a default judgment is a discretionary one."  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  A court should consider the following factors in determining whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The majority of the Eitel factors support default judgment.  First, if the motion for default judgment were to be denied, then Defendant would likely be left without a remedy given Sedlacek's failure to appear or otherwise defend this action.  See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002).  Second, because Sedlacek has not answered the Third-Party Complaint or otherwise appeared in this action, the possibility of a dispute concerning material facts is unknown.  Third, Defendant properly served Sedlacek and there is no evidence in the record that Sedlacek's failure to appear and otherwise defend this action was the result of excusable neglect.  Fourth, the sum of money being sought by Defendant is reasonable in that it is tailored to the specific misconduct of Sedlack; namely, Sedlacek's failure to pay the withdrawal liability which it had assumed responsibility for under the asset sale agreement with Defendant.  See Pepsico, 238 F.Supp.2d at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct").  Finally, although the seventh Eitel factor which favors decisions on their merits weighs against default judgment, the Court finds that this factor is not dispositive.

Having determined that on balance the Eitel factors discussed above support Defendant's motion for default, the Court turns to the merits of Defendant's substantive claims and the sufficiency of the evidence (the second and third Eitel factors).  These factors essentially require Defendant to state a claim on which it may recover.  Danning v. Lavine,

United States District Court
Northern District of California

572 F.2d 1386, 1388 (9th Cir. 1978).  Defendant makes a single claim for contractual indemnity.  "Where ... parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity."  <u>Rossmoor Sanitation, Inc. v. Pylon, Inc.</u>, 13 Cal.3d 622, 628 (1975).

Here, the asset sales contract provided in relevant part that Sedlack would indemnify Defendant for any loss, liability, claim, damage, or expense (including reasonable legal fees and expenses) suffered or incurred as a result of: "(1) any breach of any covenant of Buyer contained in this Agreement requiring performance after the Closing Date, . . . [and] (6) all obligations and liabilities of whatever kind and nature, primary or secondary, direct or indirect, absolute or contingent, known or unknown, whether or not accrued, whether arising before or after the Closing Date, of the Business."  (Dkt. No. 55-2, pp. 11-12).   The contract further provided that Sedlacek assumed "any liability arising under the Seller's contracts, including specifically Seller's pre-existing obligations to the Carpenters Union."  (Dkt. No. 55-2, p. 6).

Sedlacek breached its contract with Defendant when it defaulted on the monthly withdrawal liability payments in August 2009.  Sedlacek received notice of this default in February 2010 and June 2010.  Although Sedlacek submitted one additional payment during this time, it did not cure the default.  Sedlacek's default triggered the indemnification provisions of the sales contract.  Pursuant to the express language of that provision, Sedlacek agreed to indemnify Defendant for any loss, liability, claim, damage or expense (including reasonable legal fees and expenses) suffered as a result of its breach.  Based on the foregoing, the Court finds that Defendant has adequately stated a claim for contractual indemnity. Defendant is thus entitled to default judgment on this claim.

### III.      Damages and Attorneys' Fees

#### A.      <u>Damages</u>

Defendant seeks $142,848.25 in damages which represents the amount Defendant paid to Plaintiff in settlement of the underlying claims.  $123,446.00 of this is for the remaining

withdrawal liability plus interest and $16,402.25 is for the attorneys' fees incurred by Plaintiff. (Dkt. No. 55-2, ¶19). Under the terms of the indemnification clause, Sedlacek agreed to indemnify Defendant for any and all damages as a result of the breach. Defendant may therefore recover the full amount of damages paid to Plaintiff under the settlement agreement.

### B. Attorneys Fees and Costs

Defendant's Motion for Default Judgment requested $24,784.66 in attorneys' fees and costs; however, counsel did not include any documentation of costs, expenses, fees, or rates. On May 24, 2012, the Court issued an order requiring Defendant to file a declaration in support of its request for fees and costs. (Dkt. No. 57). Defendant did so on May 30, 2012. (Dkt. No. 59). Defendant now seeks $21,134.66 in attorneys' fees and costs incurred through March 31, 2012, plus $2,887.50 in fees for work performed finalizing the settlement agreement and preparing the underlying motion for default judgment. Defendant thus seeks a total of $24,022.16 in attorneys' fees and costs.

In the context of a motion for default judgment, where a party is entitled to reasonable attorneys' fees by either contract or statute, the court will determine the amount to be awarded. See James v. Frame, 6 F.3d 307, 311 (5th Cir. 1993). Pursuant to the asset sales agreement between Defendant and Sedlacek, Sedlacek agreed to indemnify Defendant for reasonable attorneys' fees and costs. The Court has reviewed counsel's Declaration and the attached billing records and finds that the fees expended on this matter are reasonable. Defendant is thus entitled to $24,022.16 in attorneys' fees and costs.

### CONCLUSION

Based on the foregoing, the Court recommends that Defendant's Motion for Default Judgment (Dkt. No. 55) be GRANTED as to the claim for contractual indemnity. The Court recommends that judgment be entered in favor of Defendant, Finer Floor Coverings, Inc. against Third-Party Defendant Sedlacek, Inc, on this claim. The Court further recommends that Defendant be awarded a total of $123,446.00 in damages and $24,022.16 in attorneys' fees and costs.

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant shall serve a copy of this report and recommendation on Third-Party Defendant Sedlacek within three days from the filing date of this Order and shall file a proof of service with this Court.

Any party may file objections to this report and recommendation with the district court judge within ten days after being served with a copy. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's ultimate Order.

**IT IS SO ORDERED.**

Dated: June 4, 2012

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

8